A93A2206. HOOTEN v. THE STATE.
A93A2497. BEARD v. THE STATE.
(442 SE2d 836)

BIRDSONG, Presiding Judge.

Although they are unrelated factually, we have consolidated these appeals because each is based upon the reservation of issues for appeal under our decision in *Mims v. State*, 201 Ga. App. 277, 279 (410 SE2d 824): James L. Hooten appeals his conviction for DUI after entering a conditional guilty plea in Fulton County Traffic Court/City Court of Atlanta, and Jerry Wayne Beard appeals his conviction of DUI following his conditional plea of nolo contendere. The records show the trial courts approved Hooten's and Beard's conditional pleas. *Held*:

1. In *Mims* we sought to establish procedures for what until then had been the informal practice of allowing criminal defendants to plead guilty while reserving the opportunity to raise on appeal rulings by the trial court which ordinarily would be waived by the plea. See *Mims*, supra at 278. Otherwise, a plea of guilty generally waives all defenses or objections, known or unknown, other than an appellate issue of whether the plea was voluntarily made and accepted, and in strictly limited circumstances, appellants "may go behind the plea to show some supervening illegality of overwhelming proportions." *Addison v. State*, 239 Ga. 622, 624 (238 SE2d 411). This exception concerns errors that go " 'to the very power of the state to bring the defendant into court to answer the charge brought against him.' " Id. "As recognized in *Blackledge v. Perry*, 417 U. S. 21, 30 (94 SC 2098,

40 LE2d 628), an unconditional guilty plea does not preclude appeal of a claim of error grounded upon the 'right not to be haled into court at all,' that is, jurisdictional and generally double jeopardy-type errors. Moreover, *Blackledge*, supra, re-affirms that other claims of error, including claims of ' "antecedent constitutional violations" or of a "deprivation of constitutional rights that occurred prior to the entry of the guilty plea" ' will not be appealable following acceptance of the unconditional guilty plea. Thus, it appears that while a claim of constitutional double jeopardy or lack of jurisdiction (and *perhaps* a claim of violation of Georgia's procedural double jeopardy provisions) generally would survive an unconditional plea of guilty, *Addison*, supra, other non-jurisdictional defects in pretrial proceedings, whether or not of constitutional magnitude, could not be asserted on appeal. *Blackledge*, supra; *Harris v. Hopper*, 236 Ga. 389, 391 (224 SE2d 1); compare *Fuller v. State*, 182 Ga. App. 614 (356 SE2d 554)." *Springsteen v. State*, 206 Ga. App. 150, 154 (424 SE2d 832) (dissent).

Now, after over two years' experience under the *Mims* procedures, we have concluded that *Mims* did not achieve the result intended. Instead, these procedures have caused the diversion of judicial resources to consideration of such extraneous issues as whether the trial court tacitly approved the reservation of issues for appeal (see *Springsteen*, supra), or approved reservation of issues by absence of indication of disapproval (see *Ballew v. State*, 206 Ga. App. 631 (426 SE2d 254)), rather than "expressly approves the reservation of the issue and accepts the guilty plea with that condition." *Mims*, supra at 279.

Further, in *Parker v. State*, 211 Ga. App. 187, 191 (438 SE2d 664), we were again diverted to whether the trial court exercised its discretion properly under *Mims*, and because of ambiguity in the record, we remanded for a plea hearing at which the trial court could "*clearly*" do so. See also *Granger v. State*, 205 Ga. App. 483 (423 SE2d 20), in which we considered whether the State had consented to the conditional plea because the State contended on appeal that it had not done so. It was not our intention in *Mims* to create new types of appellate issues, and, of course, none of these issues would have arisen without the conditional appeals procedures.

Additionally, *Mims* has led to further expansion of conditional pleas to conditional pleas of nolo contendere (see *Harmon v. State*, 206 Ga. App. 333 (425 SE2d 343)), and conditional guilty pleas in which First Offender Act status was granted. See *Springsteen*, supra. Because of the significant other benefits received by entering a nolo contendere plea or receiving first offender status, we do not believe it appropriate to confer the additional benefit of a conditional plea. Although not a guilty plea, a nolo contendere plea is the equivalent of a guilty plea except that it cannot work civil disqualifications; it is an

assertion by the defendant that he does not wish to contest the truth of the charges against him. *Fortson v. Hopper*, 242 Ga. 81, 82-83 (247 SE2d 875). See also OCGA § 17-7-95. If a defendant does not wish to contest the charges against him in the trial court and enters a nolo contendere plea, we discern no valid reason for allowing that defendant to adopt a different posture on appeal so that he can then contest the charges against him. In first offender status cases, we perceive no benefit in allowing a plea which entitles an accused to a probationary period that could lead to expunging the record of his conviction while at the same time permitting him to engage in a tactic which allows him to contest this plea. A guilty plea has an important relationship to rehabilitation that should not be so easily dismissed.

Perhaps more significantly, however, conditional guilty pleas inherently demand that we disregard other important rules of appellate practice such as assuring the issue was raised and preserved properly in the trial court; not acquiesced in, waived, or induced; and, in particular, whether the error resulted in prejudice to the party claiming error. Instead, errors preserved by conditional pleas are considered in the abstract and without regard for the context in which the error was or would have been asserted if there had been a trial. Thus, in *Harmon*, supra, an appeal from a conditional nolo contendere plea, this court considered the trial court's pretrial ruling on a requested charge even though evidence was yet to be presented, the trial court did not grant the requested charge and, ultimately, no charge was ever given because of the plea. In the same manner, in *Ballew*, supra at 632-633, we vacated Ballew's convictions based upon his guilty pleas to driving under the influence of alcohol, possessing alcohol by consumption by a minor, running a red light, and manufacturing a false government identification document, and remanded the case to the trial court to consider conflicts in the evidence on whether Ballew requested an independent blood test. We did not address, however, whether the error asserted affected Ballew's convictions of the other offenses.

More significantly, conditional guilty pleas vitiate the harmless error rule; because no trial took place, there is no way to determine whether the error asserted resulted in prejudice to the appellant. Thus, there have been reversals in some cases even though the appellants have failed to show that they were harmed. Our Supreme Court explained the basis for the harmless error rule in criminal cases in this manner: " 'When a plaintiff in error brings a case here, he must show error which has hurt him. This court is not an expounder of theoretical law, but it administers practical law, and corrects only such errors as have practically wronged the complaining party.' " *Hall v. State*, 202 Ga. 619, 620 (44 SE2d 234). Conditional pleas, however, inevitably result in consideration of errors which have not practically wronged the appellant. Because there is no way to test for harm when

errors preserved by conditional pleas are reviewed, we have, in effect, presumed prejudicial, reversible error when a full trial record might show only harmless error. Moreover, none of the purported errors asserted in these appeals has, in fact, harmed any of these appellants because they all entered pleas admitting or not contesting their guilt. While it might be argued that the effect of the trial courts' rulings in these cases caused the defendants to plead guilty, there are means available to challenge erroneous rulings of the trial court without using a conditional plea and none of the appeals reviewed so far has sought to set aside the guilty pleas on the grounds such pleas were involuntarily entered.

Further, conditional guilty pleas encourage a "sporting" view of criminal law that we refuse to allow in other situations. Appellants are not usually allowed to gamble on favorable results by refusing to challenge perceived erroneous rulings by the trial court with the expectation that they can achieve a more favorable result on appeal. See *Nelson v. Miller*, 169 Ga. App. 403, 405 (312 SE2d 867). Nor do we allow appellants to submit to rulings or acquiesce in holdings and then complain of the same rulings on appeal. See *Whisnant v. State*, 178 Ga. App. 742, 744 (344 SE2d 536). If appellants want to plead guilty they should do so, but they should not be allowed to plead guilty and still contest their guilt. Our current practice of permitting conditional pleas, however, unwisely allows them to do both, which perhaps explains why at least one appellant has entered two conditional guilty pleas. See *Claffey v. State*, 211 Ga. App. 335 (439 SE2d 516); *Claffey v. State*, 209 Ga. App. 455 (433 SE2d 441).

Further, allowing conditional pleas deprives trial courts of the opportunity to correct their own rulings since many conditional pleas follow the denial of some specie of motions in limine. As the trial court can modify a ruling on a motion in limine at trial (Agnor's Georgia Evidence (2d ed.), Motion in Limine, § 8-1.1, citing *Frink v. State*, 177 Ga. App. 604 (340 SE2d 631), the *Mims* procedures allow appellants to circumvent this step in the process.

Moreover, the *Mims* procedures, by eliminating the authority of this court to determine which interlocutory rulings will be considered, also undermine the interlocutory appeals procedures authorized by our legislature for seeking appellate review of a trial court's interlocutory rulings. See OCGA § 5-6-34 (b). Further elimination of the *Mims* procedures will not deprive an accused who genuinely feels aggrieved by a trial court's ruling of the opportunity to seek appellate review as long as the trial court deems appellate review necessary. Thus, today we merely restore this court to its appropriate role in these cases, and, in fact, most conditional pleas follow denials of motions in limine or motions to suppress, which could be appealed under OCGA § 5-6-34 (b). In addition, eliminating the conditional pleas will end appeals by

those who could have filed direct appeals under OCGA § 5-6-34 (a) challenging the denials of their motions for discharge and acquittal under OCGA § 17-7-170, but instead were allowed to assert that issue after their guilty pleas. See *Ballew v. State*, 211 Ga. App. 672 (440 SE2d 76); *Goodwin v. State*, 202 Ga. App. 655 (415 SE2d 472); *Wells v. State*, 201 Ga. App. 398 (411 SE2d 125).

Finally, although guilty pleas are recognized as a significant step toward rehabilitation, and as a factor that itself can be, and frequently is, considered in sentencing (*Sparks v. State*, 176 Ga. App. 8 (335 SE2d 298); *Thompson v. State*, 154 Ga. App. 704, 708-709 (269 SE2d 474)), the practice of conditional pleas allows appellants to defer, perhaps indefinitely, admitting personal responsibility for their criminal acts as they would by a genuine plea of guilty. "Rather than acknowledging criminal culpability and standing ready to accept lawful and adequate punishment, such an offender seeks to cloak himself in any protective sentencing mantel which a guilty plea affords without relinquishing any entitlement to the legal weapons at his disposal in his unabated quest to overturn the very conviction to which he has entered his plea of purported contrition." *Springsteen*, supra at 155.

Although we are aware that our Supreme Court has also considered errors preserved by conditional guilty pleas (see, e.g., *Ashley v. State*, 261 Ga. 488 (405 SE2d 657)), we have found no decisions by the Supreme Court in which the issue of conditional guilty pleas was raised for consideration and decided. Therefore, these cases are not binding precedent on the question we now decide. Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents. *Gordy Tire Co. v. Dayton Rubber Co.*, 216 Ga. 83, 89 (114 SE2d 529).

We are not unmindful of the considerations raised in the dissent, and, of course, those were the factors which led to adoption of these procedures in the first instance. After two years under these procedures, however, the results did not match these aims, and more recent appeals provide no cause for continuing something that has not worked. Moreover, these goals provide no valid reasons for abandoning time-tested rules of appellate procedure and, in particular, rules without which it is impossible to determine whether harmful, reversible error of a constitutional magnitude has been committed. Nor do these goals provide a sufficient cause to disregard the interlocutory appeals procedures which are and will continue to be available.

Further, it must not be forgotten that these appellants have all freely and voluntarily admitted their guilt to the crimes of which they were convicted. Therefore, no valid reason exists for allowing them to search for some means to escape the effect of their pleas. At some point criminal defendants, like all citizens, must learn to live with the

consequences of their decisions. Allowing them to receive the benefits of a guilty plea while at the same time seeking to deny their guilt does not achieve that end.

Accordingly, the conditional plea procedures established in *Mims v. State*, supra, are disapproved and will no longer be allowed by this court. *Mims v. State*, supra, on this issue and all decisions by this court based upon *Mims* authorizing conditional pleas will not be followed.

Consequently, in aid of our jurisdiction (Ga. Const. 1983, Art. VI, Sec. I, Par. IV), 30 days after the date this opinion is published in the official advance sheets, pleas in which the accused attempts to condition upon the preservation of the rights to raise non-jurisdictional errors by the trial court will not be considered by this court, and all the usual rules of appellate practice, including the waiver of errors by guilty pleas, will be applied.

Because the trial courts permitted the conditional pleas in these appeals under the *Mims* procedures, however, we will address the errors asserted.

## Case No. A93A2206

2. Hooten appeals the denial of his motion to suppress evidence from his arrest during a traffic roadblock. He contends his stop and search and seizure violated his rights under the United States and Georgia Constitutions because the roadblock did not comply with the standards established in *Michigan Dept. of State Police v. Sitz*, 496 U. S. 444 (110 SC 2481, 110 LE2d 412) and *State v. Golden*, 171 Ga. App. 27 (318 SE2d 693).

Appellate review of Hooten's contentions requires consideration of the evidence reviewed by the trial court and Hooten's appellate brief contains citations to a purported transcript, but no transcript has been forwarded as part of the record on appeal. Hooten's notice of appeal provided that nothing should be omitted from the evidence on appeal, but it did not state that a transcript of the evidence had been filed for inclusion in the record. The clerk below has certified that no transcript was filed.

Factual assertion contained in appellate briefs which are not supported by evidence in the record cannot be considered in the appellate process (*Hudson v. State*, 185 Ga. App. 508 (364 SE2d 635)), and briefs cannot be used in lieu of the record or transcript to add evidence to the record. *Williams v. State*, 193 Ga. App. 677, 678 (388 SE2d 893). Consequently, this appeal is subject to the well-established rule that the burden is on the appellant to show error by the record, and when a portion of the evidence bearing on the issue raised is not brought up so that this court can make its determination from

a consideration of it all, an affirmance as to that issue must result. *Ross v. State*, 195 Ga. App. 624, 626 (394 SE2d 418). Moreover, examination of Hooten's arguments shows that even if the transcript contained the alleged testimony, an affirmance would result since the facts allegedly testified to by the police officers do not support Hooten's contentions. According to Hooten's allegations, the officer testified the roadblock was set up at the instance of supervisory personnel, all roadblocks are set up in the same way by the State Patrol in accordance with procedures taught in trooper school, and all vehicles were stopped to check for drivers' licenses and proofs of insurance. These procedures are sufficient to establish a valid routine roadblock within the meaning of *Davis v. State*, 194 Ga. App. 482, 483 (391 SE2d 124); *Evans v. State*, 190 Ga. App. 856 (380 SE2d 332); *Sapp v. State*, 188 Ga. App. 700, 701 (374 SE2d 114); and *Golden*, supra. Hooten's contention that there must be advance notice of the roadblock is without merit. As even under Hooten's version of the trooper's testimony showed that this was a valid roadblock and not a pretext for stopping his vehicle, the enumeration of error is without merit. *Mims*, supra at 280. Accordingly, Hooten's conviction must be affirmed.

### Case No. A93A2497

3. Jerry Wayne Beard appeals his convictions based upon his pleas of nolo contendere to driving under the influence (OCGA § 40-6-391) and driving left of center (OCGA § 40-6-40).

Beard contends an anonymous telephone tip is a legally insufficient basis upon which to stop his vehicle. See *Moreland v. State*, 204 Ga. App. 218, 220 (418 SE2d 788); *Johnson v. State*, 197 Ga. App. 538, 539-540 (398 SE2d 826). The deputy sheriff who stopped Beard, however, testified that there was an anonymous telephone tip that someone was driving in an erratic manner a vehicle that matched Beard's and with the same Georgia license tag number, but he did not stop Beard because of that tip. Instead, the deputy testified he stopped Beard solely because he followed Beard's car for about three-quarters of a mile and saw him cross the centerline twice without signaling. Based upon this uncontradicted and uncontested testimony, the trial court found that the stop was authorized. As a general rule, the trial court's decision on questions of fact and credibility at a suppression hearing must be accepted unless clearly erroneous. *Santone v. State*, 187 Ga. App. 789, 790 (371 SE2d 428). As the trial court's findings of fact are supported by evidence of record, this enumeration of error is also without merit. *Mims*, supra at 280. Accordingly, Beard's conviction is affirmed.

*Judgments affirmed. Pope, C. J., McMurray, P. J., Cooper, An-*

*drews, Johnson and Smith, JJ., concur. Beasley, P. J., and Black-*
*burn, J., concur in part and dissent in part.*

BEASLEY, Presiding Judge, concurring in part and dissenting in part.

I concur fully in all but the first division of the majority opinion. I would not overrule the decisions which have established and refined the practice of permitting a defendant to acknowledge guilt, receive a sentence, and with the agreement of the State and discretionary approval of the trial court, reserve a particular issue or issues for appellate review. So long as this expeditious procedure is clearly followed in the trial court, as we urged in *Springsteen v. State*, 206 Ga. App. 150, 151 (424 SE2d 832) (1992), the parties, the witnesses, and the court should not be put to the expenditure of time and other resources just to preserve an issue which even the trial court considers worthy of our review.

There is an adequate safeguard against abuse in the requirement that the trial court approve the use of this procedure. It avoids the myriad potential missteps of a trial but still gets to the heart of what might be reversible error of constitutional magnitude.

*Claffey v. State*, 209 Ga. App. 455 (433 SE2d 441) (1993), and *Claffey v. State*, 211 Ga. App. 335 (439 SE2d 516) (1993), cited in the majority opinion, illustrate the efficacy of the procedure. Ms. Claffey pleaded guilty to separate drug charges in these cases, and the court permitted her to reserve the right to appeal constitutional issues which related to the searches and seizures of contraband. She appealed, we affirmed the court's denials of the motions to suppress the evidence, and her convictions thereby became final.

The alternatives to this procedure would have been more time-consuming and required two considerations of each of the cases, both on the trial level and possibly before this court on appeal. If interlocutory appeal had been granted, affirmance of the trial court rulings would have required the trial court to pick up where it had left off and proceed either with a trial or a guilty plea. A hiatus of at least many months would have intervened. Defendant would have achieved a delay in his or her decision to plead guilty and in the court's imposition of sentence. If the decision is to go to trial, witnesses' memories will be dimmer and their availability may be in greater jeopardy. Legal issues arising in the trial, such as jury selection, admissibility of evidence, and jury instructions, may give additional bases for appeal. This would be the second appeal in the case. If, on the other hand, the defendant pleads guilty after an unsuccessful interlocutory appeal, he or she can still appeal questions such as the voluntariness of the plea and the legality of the sentence. Again, there would be two appeals.

Another alternative is to proceed with the trial, after a motion to suppress is denied, and wait to challenge the denial until the direct appeal. But that requires the preparation and presentation of a trial when even the defendant agrees that he or she is guilty of the offense. This exercise, involving many people and much administration especially if a jury were involved, would be necessary just to preserve the one issue which defendant wishes to challenge. Of course, along this path, more issues may be created which would not materialize at all if *Mims* were followed.

The conditional pleas do not allow defendants to plead guilty and still contest their guilt. They are permitted only to contest some procedural aspect of the case which would affect the validity of a conviction based on a jury or bench trial. The pleas of guilty and sentences thereon, which are secured at a substantially earlier time than if the interlocutory route were the only one, are final immediately if the limited *Mims* appeal is unsuccessful.

The courts must find processes to achieve the "speedy, efficient, and inexpensive resolution of . . . prosecutions" if we are to abide by the spirit of the mandate in the 1983 Georgia Constitution, Art. VI, Sec. IX, Par. I. We have such a process here, and it precedes *Mims v. State*, 201 Ga. App. 277 (410 SE2d 824) (1991). See *Daniel v. State*, 199 Ga. App. 180 (404 SE2d 466) (1991). It is similar to paring down the issues in a civil case, which is one of the objectives of our Appellate Settlement Conference procedure set out in Rule 52. I cannot concur in the decision to abandon it.

I am authorized to state that Judge Blackburn joins in this opinion.

DECIDED MARCH 15, 1994 —
RECONSIDERATION DENIED APRIL 1, 1994.

*Donald C. Turner*, for Hooten.
*Louise T. Hornsby, Solicitor*, for State.

*Banks & Stubbs, Rafe Banks III*, for Beard.
*D. Terry Stringer, Solicitor, James A. Ward, Assistant Solicitor*, for State.